[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1156 
Raymond Victor Bethel appeals from the trial court's order dismissing his claims against Rex Thorn for failure to state a claim upon which relief can be granted. We hold that while certain of Bethel's stated claims were claims upon which relief could not be granted against Thorn, certain others were claims upon which relief could be granted. Therefore, we affirm in part, reverse in part, and remand.
 I.
In April 1998, Bethel sued Diesel "Repower", Inc. ("Diesel"), and its president, Thorn, alleging breach of contract (Counts I and II), fraud (Counts III through VI), fraudulent suppression (Count VII), and negligence (Count VIII) against Diesel and against Thorn individually. Bethel's allegations arise out of two contracts between him and Diesel. The first contract was for Bethel's purchase of a marine engine and transmission. The second contract was for Bethel's purchase of three generators. Because of the posture of this case, we must rely on the "Statement of Facts" appearing in Bethel's complaint:[1]
 "5. Beginning in July of 1996, the Plaintiff, Mr. Bethel, entered into negotiations with the Defendants [Thorn and Diesel] for the purchase of a marine engine and transmission.
 "6. During those negotiations, Mr. Bethel specifically explained to Mr. Thorn, the president of Diesel Repower, that the timely acquisition of an engine and transmission was critical, in order to make necessary repairs to a commercial shipping vessel, the `Manor Park.' Mr. Bethel further explained that the Manor Park had developed significant engine problems that would render the ship unfit for service as a commercial shipping vessel until a replacement engine and transmission could be delivered and installed. Mr. Thorn repeatedly represented that Diesel Repower could supply a suitable marine engine and transmission within thirty (30) days of an order. Mr. Thorn also represented that, although the transmissions were otherwise in very limited supply, the Defendants had a suitable transmission available for immediate delivery from their distributer [sic]. In addition, Mr. Thorn represented that Mr. Bethel was required to prepay the purchase price of the engine and transmission as a condition of the contract. During those negotiations, the parties also discussed the purchase of three generators from the Defendants.
 "7. On August 15, 1996, Mr. Bethel entered into a written contract with the Defendants for the purchase of a marine engine and transmission. On that same date, in reliance on the representations of Mr. Thorn, Mr. Bethel finalized a transfer of $93,975.00, reflecting the total purchase price of the engine and transmission, to the Defendants.
 "8. The Defendants failed and refused to ship the transmission and engine as represented by Mr. Thorn.
 "9. Subsequently, Mr. Bethel made repeated inquiries to the Defendants regarding the status of the engine and transmission. The Defendants repeatedly represented that they anticipated shipping the engine and transmission in early October. Thereafter, the Defendants continued to represent that the engine and transmission would be shipped in the very near future, and that they would contact Mr. Bethel at the time of the shipment. Mr. Bethel continued *Page 1157 
to rely on these representations by the Defendants.
 "10. On February 10, 1997, Mr. Bethel entered into a second contract with the Defendants for the purchase of three generators. The purchase price for the generators was $9,000.00 per generator. The Defendants represented that the generators would be shipped promptly after payment of the full purchase price. In reliance on these representations, Mr. Bethel prepaid the entire purchase price of the three generators, $27,000.00, as required by the Defendants.
 "11. On April 5, 1997, Mr. Bethel wrote to Mr. Thorn and Diesel Repower, and informed them that the `Manor Park' was scheduled to be back in service at the beginning of May as part of a charter contract. Mr. Bethel requested that Mr. Thorn and Diesel Repower update him on the status of the engine and transmission. The Defendants responded on May 3, 1997, and represented that despite previous delays, the `bottom line' was that Mr. Bethel's order would be completed within two weeks.
 "12. In May or June of 1997, two of three generators ordered on February 10, 1997 were shipped to and received by Mr. Bethel. Also, in June or July of 1997 the Defendants represented to Mr. Bethel that the engine and transmission had been shipped. However, Mr. Bethel never received either the engine or the transmission, and was informed by the shipping company that no such arrangements had been made by the Defendants. Despite repeated efforts, Mr. Bethel was unable to contact the Defendants after July of 1997.
 "13. To date, Mr. Bethel has never received the engine or transmission that he purchased and paid for in full on August 15, 1996. Mr. Bethel also has never received one of the generators that he purchased and paid for in full on February 10, 1997."
Thorn and Diesel each moved, pursuant to Rule 12(b)(6), Ala.R.Civ.P., to dismiss Bethel's complaint for failure to state a claim upon which relief can be granted. After a hearing, the trial court granted Thorn's motion to dismiss, but denied Diesel's motion to dismiss.[2] Bethel moved the trial court to "reconsider" its order granting Thorn's motion to dismiss. Thorn responded by moving the trial court for entry of a final judgment pursuant to Rule 54(b), Ala.R.Civ.P. The trial court denied Bethel's motion to reconsider and entered a final judgment in favor of Thorn, pursuant to Rule 54(b). Bethel appeals from the judgment of dismissal, but only insofar as it related to his fraud and fraudulent-suppression claims, Counts III through VII.
 II.
When reviewing a trial court's dismissal of a complaint for failure to state a claim upon which relief can be granted, this Court, in determining the sufficiency of the complaint, construes the plaintiff's allegations in favor of the plaintiff and resolves all doubts concerning the sufficiency of the complaint in favor of the plaintiff. See Boswell v. Liberty Nat'l Life Ins. Co.,643 So.2d 580, 581 (Ala. 1994). "`"In so doing, this Court does not consider whether the plaintiff will ultimately prevail, only whether he has stated a claim under which he may possibly prevail."'" Id. (quoting Grant v. Butler, 590 So.2d 254,255 (Ala. 1991) (quoting Greene County Bd. of Educ. v. Bailey,586 So.2d 893 (Ala. 1991))) (emphasis added in Grant). Thus, "`"a dismissal for failure to state a claim is properly granted only when it appears beyond a doubt that the plaintiff can prove no set of facts entitling him to relief."'" Id. *Page 1158 
Under Rule 8, Ala.R.Civ.P., a complaint is sufficient if it puts the defendant on notice of the claims against him. SeePhillips Colleges of Alabama, Inc. v. Lester, 622 So.2d 308, 311
(Ala. 1993) ("under modern rules of civil practice the pleadings generally need only to put the defending party on notice of the claims against him"). However, the rule of generalized notice pleading is qualified by Rule 9(b), Ala.R.Civ.P., where the plaintiff pleads fraud. Rule 9(b) provides in pertinent part that "[i]n all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity." But, as the Committee Comments to Rule 9(b) explain:
 "[T]his special requirement as to fraud . . . does not require every element in such actions to be stated with particularity. It simply commands the pleader to use more than generalized or conclusory statements to set out the fraud complained of. The pleading must show time, place and the contents or substance of the false representations, the fact misrepresented, and an identification of what has been obtained. But knowledge by the defendant of the falsity of the representation and reliance on the representation by the plaintiff can still be generally alleged. . . . Thus[,] it should be expected that the courts will strive to find the details necessary for the sufficiency of such a complaint, if the pleading gives fair notice to the opposing party whereas heretofore the same pleading would have been held insufficient.
 "Rule 9(b) also provides that conditions of the mind, such as malice, intent or knowledge, may be averred generally since further specification in such cases is possible only by pleading the evidence."
(Citations omitted.) Thus, under Rule 9, for a pleading to state a claim of fraud, "`"[t]he pleading must show [the] time, [the] place, and the contents or substance of the false representations, the facts misrepresented, and an identification of what has been obtained."'" Lester, 622 So.2d at 311 (quoting Miller v. MobileCounty Board of Health, 409 So.2d 420, 422 (Ala. 1981) (quoting the Committee Comments to Rule 9(b))) (alterations in Lester); see also Robinson v. Allstate Ins. Co., 399 So.2d 288, 290 (Ala. 1981) ("The pleader must state the time, the place, the contents or substance of the false representations, the fact misrepresented, and an identification of what has been obtained."). Where the alleged fraud is "predicated upon a promise, it is essential that the [pleader allege that the] promisor intended not to perform at the time of making the promise." Robinson, 399 So.2d at 290.
Bethel argues that Thorn, as president of Diesel, can be held individually liable for the fraudulent acts or omissions he personally committed in his capacity as a corporate officer. We agree that this is a correct statement of law. See Ex parteCharles Bell Pontiac-Buick-Cadillac-GMC, Inc., 496 So.2d 774, 775
(Ala. 1986) ("In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity."); Crigler v. Salac, 438 So.2d 1375,1379-80 (Ala. 1983) ("This rule does not depend on the same grounds as `piercing the corporate veil'. . . ."). This does not, however, resolve the ultimate issue before this Court, that is, whether the allegations in Bethel's complaint are sufficient to state claims of fraud and fraudulent suppression upon which relief can be granted against Thorn. We must therefore examine the allegations in Counts III through VII of Bethel's complaint.
 A. Counts III and V
In Count III, labeled "Fraud," Bethel alleges that
 "In negotiating the contract for the sale of the marine engine and transmission to the Plaintiff, the Defendants expressly and repeatedly represented that *Page 1159 
the engine and transmission would be shipped within thirty (30) days after the Plaintiff's confirmed order, and the Defendants' receipt of the purchase price. The Defendants also expressly represented to the Plaintiff that the transmission was available for immediate delivery from their distributor."
Bethel further alleges in Count III that these representations concerning the time of delivery were material to the contract; that "the Defendants" knew when they made them that these representations were false, or that they made these representations recklessly or negligently; that at the time they made these representations "the Defendants" did not intend to perform them and intended to deceive Bethel; and that Bethel reasonably relied on these representations in entering into the contract and paying the purchase price of the engine and transmission in advance.
In Count V, also labeled "Fraud," Bethel alleges that the "Defendants [made] repeated representations and assurances that the engine, transmission, and generators would be delivered in a timely fashion" and that in reliance on these representations Bethel entered into the contract for the purchase of the three generators. Bethel further alleges in Count V that "the Defendants" knew when they made them that these representations were false, or that they made these representations recklessly or negligently; that at the time they made these representations "the Defendants" did not intend to perform them and intended to deceive Bethel; and that Bethel reasonably relied on these representations in entering into the contract and paying in advance the purchase price of the three generators.
Because the fraud alleged in Counts III and V is predicated upon promises, that is, promises to ship the engine and transmission within 30 days and to deliver the engine, transmission, and generators in a timely fashion, we construe these Counts as intended to state claims of promissory fraud. To state a claim of promissory fraud, the plaintiff must allege facts showing "(1) a false representation; (2) of an existing material fact; (3) that is [reasonably] relied upon; (4) damage resulting as a proximate cause[; (5) that] at the time of the misrepresentation, the defendant had the intention not to perform the promised act[;] and (6) that the defendant had an intent to deceive." Pinyan v. Community Bank, 644 So.2d 919, 923 (Ala. 1994); see Goodyear Tire Rubber Co. v. Washington,719 So.2d 774, 776 (Ala. 1998).
Bethel has alleged in Counts III and V sufficient facts to support a finding of each of the elements of promissory fraud and a finding that Thorn personally participated in and knew of the alleged promissory fraud. Bethel has also alleged in Counts III and V sufficiently specific facts to inform Thorn of the time of the misrepresentations (August 15, 1996, and February 10, 1997); the place where the misrepresentations were made (at Diesel's place of business); the substance of the misrepresentations and the facts misrepresented (that Thorn and Diesel had intended to deceive Bethel and had induced Bethel to enter into the contracts and pay the purchase price in advance by promising to ship the engine, transmission, and generators); and an identification of what was obtained (payment for the engine, transmission, and generators). See Lester, 622 So.2d at 311 (holding that the plaintiff's complaint was sufficient to state a claim of fraudulent misrepresentation); State Farm Fire Cas. Ins. Co. v.Lynn, 516 So.2d 1373, 1375 (Ala. 1987) (holding that the trial court did not err in denying the corporate defendant's motion to dismiss the plaintiff's complaint alleging fraudulent misrepresentation because "[the complaint] gave sufficient notice to [the corporate defendant] regarding what the statement was, who made it, and when it was made").
Thorn argues that Bethel has failed to allege with sufficient particularity facts showing that when Thorn made the alleged promises he knew the promises were false *Page 1160 
and that at that time he did not intend to perform the promised acts, but intended to deceive Bethel. We disagree. "[I]ntent [and] knowledge . . . may be averred generally." Rule 9(b), Ala.R.Civ.P.; see also id. Committee Comments ("[K]nowledge by the defendant of the falsity of the representation . . . can still be generally alleged. . . . Rule 9(b) also provides that conditions of the mind, such as . . . intent or knowledge, may be averred generally. . . ."). Bethel alleges that Thorn and Diesel "knew that the . . . representations were false at the time that they were made" and that "[Thorn and Diesel] made [the alleged promises] with the intention and knowledge that the contract[s] would not be performed as promised." Bethel's general allegations that Thorn knew the promises were false at the time they were made and that Thorn intended and knew that the contracts would not be performed met the requirements of Rule 9(b). Accordingly, the allegations in Counts III and V are sufficient to state claims of promissory fraud upon which relief can be granted against Thorn.
 B. Counts IV and VI
In Count IV, labeled "Fraud," Bethel alleges fraudulent acts that he says occurred after the formation of the contract to purchase the engine and transmission; in Count VI, also labeled "Fraud," Bethel alleges fraudulent acts that he says occurred after the formation of the contract to purchase the three generators. Specifically, in Count IV, Bethel alleges:
 "After the contract for the purchase of the engine and transmission was finalized, and after [Bethel] fully performed his obligations thereto by prepaying the entire purchase price, the Defendants repeatedly and expressly misrepresented to the Plaintiff that they were capable of fully performing their obligations under the contracts, and that the delivery of the engine and transmission would be forthcoming and timely. In addition, the Defendants misrepresented that the engine and transmission had been shipped to [Bethel]."
In Count VI, Bethel alleges:
 "After the contract for the purchase of the generators was finalized, and after [Bethel] fully performed his obligations thereto by prepaying the entire purchase price, the Defendants repeatedly and expressly misrepresented to [Bethel] that they were capable of fully performing their obligations under the contracts, and that delivery of all three generators would be forthcoming and timely."
In each count, Bethel alleges that these representations were false; and that the "Defendants" made them knowingly, recklessly, or negligently, and "with the intent to defraud and injure [Bethel]" and "to prevent [him] from making alternative contractual arrangements, and from seeking immediate legal relief on the contract."
Bethel refers to these counts as stating fraudulent-misrepresentation claims,[3] but because the alleged misrepresentations concern the performance of promises, that is, because they concern Thorn and Diesel's ability to perform the contracts and the promised act of "timely" delivery of the engine, transmission, and generators,[4] we construe these allegations as attempts to state claims of promissory fraud. See SpringHill Lighting Supply Co. v. Square D Co., 662 So.2d 1141, 1149 (Ala. 1995) ("In promissory fraud, the material existing fact that is misrepresented *Page 1161 
is the defendant's state of mind, when the defendant represents that he intends to perform some act although he does not in fact intend to perform it."). However, they are insufficient. Bethel does not allege in either count that at the time Thorn and Diesel allegedly made these "repeated" promises to "timely" deliver the engine, transmission, and generators they intended not to perform the acts promised, but intended instead to deceive Bethel. "In order for fraud to be predicated upon a promise, it is essential that the promisor intended not to perform at the time of making the promise." Robinson v. Allstate Ins. Co., 399 So.2d at 290; see also Washington, 719 So.2d at 776 ("[T]o support a claim of promissory fraud, the plaintiff must show that at the time of the alleged misrepresentation (that is, the promise), the defendant intended not to do the act or acts promised, but intended to deceive the plaintiff."); Russellville Prod. Credit Ass'n. v. Frost,484 So.2d 1085, 1086 (Ala. 1986) ("The failure to perform a promised act is not in itself evidence of intent to deceive at the time a promise is made. If it were, the mere breach of a contract would be tantamount to fraud.") (citing PS Business, Inc.v. South Central Bell Telephone Co., 466 So.2d 928 (Ala. 1985)). In Robinson, this Court held that the plaintiff's complaint failed to state a claim for fraudulent misrepresentation because it failed to state either "the time [or] location of the alleged misrepresentation," failed "to identify the individual who actually is alleged to have misrepresented the fact," and "fail[ed] to allege any intent by [the defendant] not to perform". 399 So.2d at 290. Similarly, Bethel has failed to allege that Thorn, at the time he allegedly made the promises, intended not to do the acts promised; therefore, the allegations in Counts IV and VI are insufficient to state claims of promissory fraud upon which relief can be granted against Thorn.
Although Bethel's allegations in Counts IV and VI for the most part concern the performance of promised acts, Bethel does allege in the last sentence of Paragraph 33 of Count IV that "[Thorn and Diesel] misrepresented that the engine and transmission had been shipped to [him]." This alleged misrepresentation, unlike the other alleged misrepresentations in Counts IV and VI, does not concern the performance of a promise, but, rather, concerns a representation of something already performed — shipment of the engine and transmission. With respect to this allegation, we do find that Count IV is sufficient to state a claim for fraudulent misrepresentation against Thorn. Bethel has alleged that Thorn misrepresented that the engine and transmission had been shipped, that Bethel reasonably relied on that misrepresentation, and that Bethel suffered damage as a direct and proximate result of his reliance on that misrepresentation.
In summary, in Counts IV and VI Bethel has failed to state claims of promissory fraud upon which relief can be granted against Thorn. With respect to the alleged misrepresentation concerning shipment of the engine and transmission, Bethel has stated in Count IV a claim of fraudulent misrepresentation as to that alleged misrepresentation, a claim upon which relief can be granted against Thorn.
 C. Count VII
In Count VII, labeled "Fraudulent Suppression," Bethel alleges that "[t]he Defendants failed to disclose their inability and unwillingness to perform in accordance with terms of the contracts despite [Bethel's] repeated inquiries" and "failed to communicate any facts concerning the status of both contracts to [Bethel] after July of 1997." Bethel further alleges that an obligation to communicate arose from the particular circumstances of the contractual relationship, namely, "[Bethel's] prepayment of the total purchase price of the goods to be delivered under both contracts, the Defendants' knowledge that the time of delivery was of critical importance, and the Defendants' . . . representations to [Bethel]." Bethel alleges that "[t]he Defendants' *Page 1162 
failure to disclose these material facts to [Bethel] prevented [him] from making alternative arrangements for the purchase of necessary equipment, and also prevented [him] from seeking appropriate legal relief," and that "[a]s a direct and proximate result of the Defendants' suppression of [their inability and unwillingness to perform the contracts], [Bethel] has suffered damages," including the equipment purchase price, additional docking fees for the "Manor Park," and lost profits.
To state a claim of fraudulent suppression, the plaintiff must allege facts showing "(1) that the defendant had a duty to disclose material facts; (2) that the defendant concealed or failed to disclose those facts; (3) that the concealment or failure to disclose induced the plaintiff to act; and (4) that the defendant's action resulted in harm to the plaintiff." Booker v.United American Ins. Co., 700 So.2d 1333, 1339 n. 10 (Ala. 1997). Bethel has alleged in Count VII facts showing each of the elements of fraudulent suppression and showing Thorn's personal participation in that alleged fraudulent suppression.
Thorn argues that the alleged particular circumstances do not give rise to a duty to disclose. We disagree. A duty to disclose may arise from the particular circumstances of the case. See Ala. Code 1975, § 6-5-102. Those circumstances include "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances." State Farm Fire Cas. Co.v. Owen, 729 So.2d 834, 842-43 (Ala. 1998). This Court has recognized that fraudulent concealment of facts after a contract has been made can support both a breach-of-contract claim and a fraud claim. See Deupree v. Butner, 522 So.2d 242, 244-45 (Ala. 1988); Herring v. Prestwood, 414 So.2d 52, 57-58 (Ala. 1982). InDeupree, purchasers of a townhome sued a corporate developer and its president, claiming breach of contract and fraud involving the developer's failure to construct a boat slip for the townhome. The purchasers alleged that the president had fraudulently suppressed facts regarding the difficulty or impossibility of obtaining the necessary "submerged land lease" for the boat slip. See Deupree, 522 So.2d at 244. On appeal, this Court affirmed a judgment based on the jury verdict in favor of the purchasers on both their contract claim and their fraud claim, holding, in pertinent part as to the fraud claim, that the evidence was sufficient to show, as between the developer and the purchasers, a "special relationship" that gave rise to a duty to disclose. Seeid. at 246. In Herring, the grantee of an option to purchase certain property sued the property owners/option grantors, alleging, among other things, that the owners/grantors had fraudulently suppressed the fact that, after signing the option contract, they had decided not to sell the property. See 414 So.2d at 55, 58. On application for rehearing, this Court upheld the jury verdict in favor of the grantee on the fraudulent-suppression claim. See id. at 58. Based on Deupree andHerring, we cannot say beyond a doubt that Bethel can prove no set of facts showing a claim of fraudulent suppression against Thorn. Therefore, we conclude that in Count VII Bethel has stated a claim of fraudulent suppression upon which relief can be granted against Thorn.
 III.
In summary, we hold that in Counts III and V Bethel has stated against Thorn claims of promissory fraud; that in Count IV he has stated against Thorn a claim of fraudulent misrepresentation as to the allegation concerning misrepresentation of the shipment of the engine and transmission; and that in Court VII he has stated against Thorn a claim of fraudulent suppression; but that in Counts IV and VI Bethel failed to state claims of promissory fraud against Thorn. Therefore, the only *Page 1163 
valid claims Bethel has against Thorn are claims of promissory fraud under Counts III and V, fraudulent misprepresentation under Count IV, and fraudulent suppression under Court VII. [5]
Accordingly, we affirm the judgment in part, but reverse it to the extent it dismissed the claims we have held were validly stated. The case is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Hooper, C.J., and Maddox, Houston, Lyons, Brown, Johnstone, and England, JJ., concur.
[1] Bethel has incorporated by reference into each of the counts in his complaint the allegations in his "Statement of Facts."
[2] Following the denial of Diesel's motion to dismiss, Diesel answered and counterclaimed, alleging that Bethel had wrongfully repudiated both the contract for the purchase of the engine and transmission and the contract for the purchase of one of the generators. Bethel later moved to dismiss Diesel's counterclaim. That motion is still pending before the trial court.
[3] To state a claim of fraudulent misrepresentation, a plaintiff must allege facts showing (1) that the defendant made a false representation; (2) of a material existing fact; (3) on which the plaintiff reasonably relied; and (4) which proximately caused injury or damage to the plaintiff. See Goodyear Tire Rubber Co. v. Washington, 719 So.2d 774, 776 (Ala. 1998); see also Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala. 1997) (holding that the "reasonable-reliance" standard applies to all fraud cases filed after March 14, 1997).
[4] The allegation concerning the shipment of the engine and transmission, however, relates to a representation of an existing fact.
[5] Consistent with the standard of review applicable in this case, we express no opinion as to whether Bethel will ultimately prevail on these claims.