394 F.Supp. 381 (1975)
RADIOMARINE CORPORATION, Plaintiff,
v.
GULF NORTHERN CO., INC., Defendant.
No. 74-269A(3).
United States District Court, E. D. Missouri, E. D.
May 1, 1975.
*382 Fritz G. Faerber, Lucas, Murphy & O'Keefe, St. Louis, Mo., for plaintiff.
Clayton J. Swank, III, Robertshaw, Merideth & Swank, Greenville, Miss., Gary T. Sacks, Goldstein & Price, St. Louis, Mo., for defendant.

MEMORANDUM
WANGELIN, District Judge.
This action is before the Court for a decision on the merits following the trial to the Court sitting without a jury.
Plaintiff, Radiomarine Corporation, (herein Radiomarine) brought this action against defendant, Gulf Northern Co., Inc., (herein Gulf Northern) seeking to recover money for a loss of certain marine electronic equipment which was lost when Gulf Northern's vessels, M/V Sarah E. Thomas and the M/V W. P. Jackson, sank.
The Court being fully apprised of the premises hereby makes the following findings of fact and conclusions of law.

Findings of Fact
1. Plaintiff Radiomarine was at all material times the owner-lessor of the following marine electronic equipment: Two NIC 75 Tubular Radar Systems; One N8A-40 Marine Radar System; One P7A-150 AM Radio Telephone; One P17A-100 VHF Radio Marine Telephone; One P22A Single Side Bank Radio Telephone; and one P17D-50 Radio Set.
2. At all material times, defendant Gulf Northern was the owner of two river towboats, the M/V W.P. Jackson and the M/V Sarah E. Thomas.
3. In February of 1968, a NIC 75 Tubular Radar System, a P7A-150 AM Radio Telephone and a P17A-100 VHF Radio Marine Telephone were installed *383 on board the motor vehicle Sarah E. Thomas.
4. On February 13, 1969, a P22A Single Side Band Radio Telephone was installed on board the motor vehicle Sarah E. Thomas, and on March 15, 1971, a N8A-40 Marine Radar System was installed on board the motor vehicle Sarah E. Thomas.
5. In February, 1971, and NIC Tubular Radar System and a P17D Radio Set were installed on board the motor vehicle W. P. Jackson.
6. The said equipment was placed on board the aforementioned vessels pursuant to the terms of three identical printed leases prepared by and on behalf of plaintiff Radiomarine.
7. Paragraph 14 of the aforementioned leases provided in pertinent part that:
. . . in case the equipment or any part thereof shall be lost, destroyed or damaged, lessee shall pay the fair value thereof . . . and R.M.C. shall determine in any case whether said equipment shall be regarded as a total loss or repaired. R.M.C. shall likewise determine in any case the fair value of the equipment . . .
8. Paragraph 21 of the aforementioned leases provided as follows:
This agreement shall be construed according to the laws of the State of New York.
9. On September 1, 1973, the motor vehicle Sarah E. Thomas sank and the equipment on board was lost. On February 29, 1972, the motor vehicle W. P. Jackson sank and the equipment on board was lost.
10. Plaintiff Radiomarine seeks damages in the amount of $31,366.37 based upon its determination of the fair value of the equipment pursuant to paragraph 14 of the leases entered into by the parties. This determination is reached by crediting 40% of the lease payments due from the alleged original selling price of each piece of equipment.
11. The term "fair value" is not defined in the printed leases of plaintiff Radiomarine, and the method by which it is to be determined is not set forth therein.
12. Defendant Gulf Northern was not apprised of the method by which plaintiff Radiomarine intended to determine "fair value" and was not aware of any policy of plaintiff regarding that determination.
13. The fair market value of the equipment at the time of its loss, according to various expert witnesses produced by all parties ranged from a low of $8,900 to $27,000.

Conclusions of Law
This Court has jurisdiction over the parties and the subject matter hereto within the Admiralty and Maritime Jurisdiction of Rule 9(h) of the Federal Rules of Civil Procedure, and statutory sections 46 U.S.C. § 740, and 28 U.S.C. § 1333.
The general rule of law concerning lease contracts such as the one presently before the Court, is that upon destruction of the subject matter property the bailee shall be liable to the bailor for the fair market value of the bailed property, absent a valid contractual agreement to the contrary. 8 Am.Jur. 2d, Bailments, § 330; and 8 C.J.S. Bailments § 55(2). Defendant Gulf Northern contends that New York law, which the contract in question is to be construed under, prohibits the enforcement of a clause, such as the one in the contract before the Court, which allows plaintiff Radiomarine to determine what "fair value" is. It is this Court's opinion that New York law would not allow the enforcement of paragraph 14 of the leases in question, since they would, and did, place defendant Gulf Northern at the mercy of plaintiff Radiomarine concerning the value of the lost marine electronic equipment. Price v. Spielman Motor Sales Co., Inc., 261 App.Div. 626, 26 N.Y.S.2d 836 (1941). The aforecited case has been repeatedly upheld by the New York courts.
*384 With the contractual provision between the parties declared void, the traditional rule concerning fair market value of property destroyed while bailed becomes the proper measure of damages.
It must be noted that had defendant Gulf Northern desired, it could have simply purchased the marine electronic equipment for the sale price. However, defendant Gulf Northern chose to make smaller monthly payments for the equipment, thereby forestalling any large capital expenditure. It is obvious to this Court that plaintiff Radiomarine should have some return on its capital invested in the electronic equipment which was placed upon defendant Gulf Northern's vessels.
In a bailment case, such as the one presently at bar, the determination of fair market value is a matter for the trier of fact, in most cases the jury. Since the Court in a bench tried case acts as the trier of fact as well as the trier of law, it is up to the Court to determine which evidence is the most credible. In the present case, the Court regards the testimony of Mr. Chester Croft, as the most credible concerning the fair market value of the various pieces of marine electronic equipment on board defendant Gulf Northern's vessels.
The Court has also considered defendant Gulf Northern's evidence concerning the obsolescence of certain of the radar systems. It is this Court's opinion, as the trier of fact, that the sum of $22,175.00 represents the fair market value of plaintiff Radiomarine's marine electronic equipment lost when defendant Gulf Northern's vessels, M/V W. P. Jackson and M/V Sarah E. Thomas, sank. Accordingly, judgment for the plaintiff Radiomarine in that amount will be entered.
Defendant Gulf Northern seeks also to bar the awarding of pre-judgment interest. The general rule in admiralty is that interest is awarded from the date of the casualty unless peculiar circumstances are present, e. g. Sinclair Refining Co. v. SS Green Island, 426 F.2d 260 (5th Cir., 1970), and The Baltimore Maru, 11 F.2d 836 (5th Cir., 1926). It is this Court's determination that such peculiar circumstances are not present in this case, and pre-judgment interest shall be awarded.