**MCALLISTER TOWING & TRANSPORTATION COMPANY, INC.,**
Plaintiff,

v.

**THORN'S DIESEL SERVICE, INC., and Rex Thorn, Defendants.**

Thorn's Diesel Service, Inc.,
Third Party Plaintiff,

v.

**NREC Power Systems, Inc.; Michael Lester; and Overnite Transportation Company, Third Party Defendants.**

No. Civ.A. 00–A–1618–N.

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 25, 2001.

Richard A. Lawrence, Montgomery, AL, for Defendant.

Allen E. Graham, Lyons, Pipes & Cook, Mobile, AL, Alexander M. Creighton III, PC, Houma, LA, for NREC Power Systems, Inc.

Brett A. Ross, Carr, Allison, Pugh, Howard, Oliver & Sisson, PC, Birmingham, AL, for Overnite Transp. Co.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This matter comes before the court on a Motion to Dismiss filed by Third Party Defendant NREC Power Systems, Inc., ("NREC") on June 11, 2001, and a Motion to Dismiss filed by Third Party Defendant Michael Lester ("Lester") on August 17, 2001. Third Party Plaintiff Thorn's Diesel Service, Inc., ("Thorn's Diesel") filed its third party Complaint on April 6, 2001, alleging a state law claim for misrepresentation against NREC and Michael Lester, an employee of NREC, and a state law claim for breach of contract against Overnite Transportation Co. In the Motions to Dismiss, NREC and Lester argue that the court lacks subject matter jurisdiction over the claims asserted against NREC and Lester and that the court lacks personal jurisdiction over NREC and Lester.[1] For the reasons to be stated, the Motions to Dismiss are due to be GRANTED.

### II. MOTION TO DISMISS STANDARDS

 A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a

J. Stephen Simms, Stephen S. McCloskey, Greber & Simms, Baltimore, MD, for Plaintiff.

1. Lester relies on the arguments raised in the brief filed by NREC. The court has, therefore, considered the arguments raised in the brief in opposition to NREC's Motion as having been raised against Lester's motion as well. Given the disposition of the motions, as will be discussed below, the analysis of the two motions is the same and no additional briefing is necessary. Because Thorn's Diesel has not had an opportunity to respond to Lester's affidavit, the court will not consider that affidavit in ruling on the motions.

"facial attack" or a "factual attack." A "facial attack" on the complaint requires the court to assess whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction. *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990); *Hayden v. Blue Cross & Blue Shield of Alabama,* 855 F.Supp. 344, 347 (M.D.Ala. 1994). A "factual attack," on the other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings. *Lawrence,* 919 F.2d at 1529. On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true. *Id.* Under a factual attack, the court may hear conflicting evidence and decide the factual issues that determine jurisdiction. *Colonial Pipeline Co. v. Collins,* 921 F.2d 1237, 1243 (11th Cir.1991). The burden of proof on a Rule 12(b)(1) motion is on the party averring jurisdiction. *Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942).

In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant. *Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir. 1988) (citations omitted); *Delong Equip. Co. v. Washington Mills Abrasive Co.,* 840 F.2d 843, 845 (11th Cir.1988); *Bracewell v. Nicholson Air Servs., Inc.,* 748 F.2d 1499, 1504 (11th Cir.1984). A prima facie case is established if the plaintiff presents sufficient evidence to defeat a motion for a directed verdict. *Morris,* 843 F.2d at 492. The court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony. *Id.* (citations omitted); *Delong,* 840 F.2d at 845; *Bracewell,* 748 F.2d at 1504. Moreover, where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff. *Delong,* 840 F.2d at 845.

## III. BACKGROUND

The Third Party Plaintiff alleges the following facts:

Thorn's Diesel is an Alabama corporation with its principal place of business located in Alabama. Thorn's Diesel primarily rebuilds large diesel engines and marine transmissions for use with large diesel engines. NREC is a Louisiana corporation with its principal place of business in Houma, Louisiana. NREC is in the business of buying and selling heavy equipment and machinery. NREC has no employees who work or reside in Alabama, has no agents or brokers in Alabama, is not licensed to do business in Alabama, and asserts that other than its transaction with Thorn's Diesel, it has conducted no business in Alabama for over five years.

In June, 2000, Rex Thorn ("Thorn"), president of Thorn's Diesel, contacted and spoke to Michael Lester ("Lester"), an employee of NREC, concerning Thorn's Diesel's interest in purchasing a used Caterpillar marine transmission gear. Thorn informed Lester that Thorn's Diesel had a buyer for the transmission for use on an ocean vessel and that Thorn's Diesel intended to resell the transmission without rebuilding it. Lester allegedly represented to Thorn that NREC had a transmission which was in the condition of a "running take out" and could be sold for use without rebuilding. "Running take out" means that the transmission was in good running condition when removed from service, was complete, and did not have any known failures or problems of any type. To ensure that the transmission was in good condition and could be resold for use without rebuilding, Thorn's Diesel paid NREC to inspect the transmission. After

having the transmission inspected, Lester informed Thorn that the transmission was in excellent condition. Thorn's Diesel decided to purchase the transmission and paid NREC for the transmission.

Thorn's Diesel, however, stopped payment on the check because its customer, McAllister Towing & Transportation Company, Inc. ("McAllister"), decided that it did not want the transmission. McAllister, however, changed its mind again and decided that it did want the transmission. Thorn contacted Lester and inquired if NREC still had the transmission which it did. Lester allegedly once again reassured Thorn that the transmission was a "running take out" and stated that "You can put that baby in and go right to work." Thorn's Diesel in turn purchased the transmission and another company picked up the transmission from NREC in Louisiana and delivered it to Marine Speciality which was also located in Louisiana. Marine Speciality was to clean, service, test, paint, detail the transmission, and send it to Thorn's Diesel upon completion. After Marine Speciality received the transmis-

sion, it notified Thorn's Diesel that the transmission would require complete disassembly and overhaul, and that the transmission lacked major components. As a result, Thorn's Diesel was unable to deliver the transmission to McAllister in the time desired by McAllister and now faces potential damages from the underlying suit McAllister has brought against Thorn's Diesel.

## IV. *DISCUSSION*

■ NREC and Lester argue that the court lacks subject matter jurisdiction over the fraud claims asserted by Thorn's Diesel. In particular, NREC and Lester contend that the fraud claims do not fall within the court's admiralty or supplemental jurisdiction. If the court finds that it has subject matter jurisdiction over the fraud claims, NREC and Lester argue that the court does not have personal jurisdiction over NREC or Lester.[2]

### A. Admiralty Jurisdiction

Article III, Section 2, of the United States Constitution extends the judicial

---

2. NREC filed a Motion to Strike (doc. # 56) Thorn's affidavit attached to Response of Third Party Plaintiff, Thorn's Diesel Service, Inc., to Motion to Dismiss by NREC Power Systems, Inc. (doc. # 52) on the basis that it contains hearsay, speculation, innuendo and is not based on the personal knowledge of the affiant or declarant. The court agrees with NREC that Thorn's affidavit does contain some statements that are inadmissible hearsay and not based on Thorn's personal knowledge, such as, Thorn's statement that "I know that Saunders Engine Company in Mobile and Warrior Gulf in Mobile have dealt with NREC." (Thorn Aff. at 2). The court, however, recognizes that the majority of Thorn's affidavit is based on personal knowledge, in particular his knowledge surrounding the transaction between NREC and Thorn's Diesel.

Although an affidavit contains some inadmissible material, a court is not required to strike the entire affidavit and instead, may

strike or disregard the inadmissible portions and consider the rest of the affidavit. *Givhan v. Electronic Eng'rs, Inc.*, 4 F.Supp.2d 1331, 1334 n. 2 (M.D.Ala.1998) (citing *Lee v. National Life Assurance Co.*, 632 F.2d 524, 529 (5th Cir.1980)). The court will not strike the entire affidavit and will consider those portions of Thorn's affidavit that are based on his personal knowledge. Consideration of the inadmissible portions, however, would not alter the court's determination and thus, the motion to strike as to those portions is due to be denied as moot. Accordingly, NREC's Motion to Strike is due to denied.

NREC also filed a Motion to Strike (doc. # 58) Thorn's affidavit that is attached to Supplement to Response of Third Party Plaintiff, Thorn's Diesel Service, Inc., to Motion to Dismiss by NREC Power Systems, Inc. (doc. # 54). Because consideration of the affidavit does not change the result, this motion to strike is due to be denied as moot.

power of the United States to "all Cases of admiralty and maritime Jurisdiction." Congress has embodied that power in a statute giving federal district courts "original jurisdiction ... of ... [a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1331.

Thorn's Diesel asserts that the court has admirability jurisdiction based on the court's prior decision in this case regarding whether the court has admiralty jurisdiction over the claim between McAllister and Thorn's Diesel. The court found that the contract between McAllister and Thorn's Diesel for the purchase of a maritime transmission to be used in one of McAllister's ships was a maritime contract, and accordingly, that McAllister's breach of contract claim fell within the court's admiralty jurisdiction. *McAllister Towing & Transp. Co., Inc. v. Thorn's Diesel Serv., Inc.,* 131 F.Supp.2d 1296, 1299–1300 (M.D.Ala.2001). Thorn's Diesel's reliance on the court's earlier ruling is misplaced because Thorn's Diesel does not allege a breach of contract claim, but alleges a claim for misrepresentation, a tort claim.

■ Admiralty tort jurisdiction is determined quite differently from admiralty contract jurisdiction. In determining whether a contract falls within admiralty jurisdiction, a court examines "the nature of the contract, as to whether it has reference to maritime service or maritime transactions." *Id.* at 1299 (quoting *Nehring v. Steamship M/V Point Vail,* 901 F.2d 1044, 1048 (11th Cir.1990)). Tort jurisdiction, however, requires the satisfaction of two tests: location and connection with maritime activity. "[F]or a tort claim to be cognizable under admiralty jurisdiction, the activity from which the claim arises must satisfy a location test and it must have sufficient connection with maritime activity." *Alderman v. Pacific N. Victor, Inc.,* 95 F.3d 1061, 1064 (11th Cir.1996) (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995)). To satisfy the location test, the tort must have occurred on navigable water or the injury suffered on land must have been caused by a vessel on navigable water. *Jerome B. Grubart, Inc.,* 513 U.S. at 534, 115 S.Ct. 1043. "Under the locality test, the tort occurs where the alleged negligence took effect." *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 266, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). The connection test requires a court to determine whether the incident has a potentially disruptive impact on maritime commerce and whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. *Jerome B. Grubart, Inc.,* 513 U.S. at 534, 115 S.Ct. 1043.

■ Thorn's Diesel's claims for misrepresentation do not satisfy the location requirement because the tort did not occur on navigable waters, but on land. Lester made the alleged misrepresentations that induced Thorn's Diesel to enter into the contract from NREC's facility in Belle Chase, Louisiana. (Chaisson Aff. at ¶ 7, 8). The misrepresentations had their desired effect on land when they induced Thorn's Diesel to enter into a contract with NREC to purchase the transmission gear. Thorn's Diesel has made no assertion that any element of the alleged misrepresentation was committed on navigable water. The court, therefore, finds that the tort did not occur on navigable waters and that Thorn's Diesel has not satisfied the location requirement. Because the location requirement is lacking, Thorn's Diesel has failed to establish a maritime tort.

The court's finding is supported by the Fifth Circuit's decision in *Kuehne & Nagel v. Geosource, Inc.,* 874 F.2d 283, 288–89 (5th Cir.1989). In *Kuehne,* the plaintiffs

argued that their claim for fraudulent inducement to contract fell within the court's admiralty jurisdiction. *Id.* at 288. The court held that even assuming that the contract between the plaintiffs and the defendant had strong maritime implications, the plaintiffs still had to satisfy the location requirement when seeking to predicate jurisdiction on a maritime tort. *Id.* The plaintiffs failed to satisfy the location requirement because the defendants made the alleged misrepresentations on land in a hotel in West Germany and the misrepresentations had their desired effect on land when they prompted the plaintiffs to sign the contracts. *Id.* at 289. The court, therefore, held that the plaintiffs' claim for fraudulent inducement to contract did not fall within the court's admiralty jurisdiction. *Id.* at 290; *see also J. Lauritzen A/S v. Dashwood Shipping, Ltd.,* 65 F.3d 139, 142–43 (9th Cir.1995) (holding that even though a claim for tortuous interference with a contract had a substantial connection to maritime commerce, the claim did not fall within the court's admiralty jurisdiction because the tort occurred on land). Likewise, even assuming that the contract between Thorn's Diesel and NREC had substantial maritime implications, Thorn's Diesel's claims for misrepresentation do not fall within the court's admiralty jurisdiction because the tort occurred on land.

### B. Supplemental Jurisdiction

Alternatively, Thorn's Diesel submits that the court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over its misrepresentation claims.[3] Under 28 U.S.C. § 1367(a), a district court that has original jurisdiction in a civil action "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or

controversy under Article III of the United States Constitution." "In other words, a district court has the power to exercise supplemental jurisdiction over all claims that 'arise out of a common nucleus of operative fact with a substantial federal claim.'" *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Florida,* 177 F.3d 1212, 1223 (11th Cir.1999) (quoting *Lucero v. Trosch,* 121 F.3d 591, 597 (11th Cir.1997)). If a court has supplemental jurisdiction over a claim under § 1367(a), a court may decline to exercise supplemental jurisdiction if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). In the absence of any of these four factors, the court must exercise supplemental jurisdiction. *Palmer v. Hospital Auth. of Randolph County,* 22 F.3d 1559, 1569 (11th Cir.1994). NREC argues that the third party complaint against NREC does not arise from the same case or controversy, and alternatively, argues that the court should decline to exercise supplemental jurisdiction over this claim for the reasons set forth in § 1367(c).

NREC and Lester argue that the misrepresentation claims do not arise from the same case or controversy as between McAllister and Thorn's Diesel because the dispute between Thorn's Diesel and NREC and Lester involves different facts, occurrences, and witnesses. Thorn's Diesel takes the opposite view, pointing out that its contention is that due to NREC's alleged misrepresentations, Thorn's Diesel allegedly did not fulfill its contract with

**3.** Section 1367 applies to claims in which the underlying claim is within the court's admi-ralty jurisdiction. *Robert E. Blake Inc. v. Excel Envtl.,* 104 F.3d 1158, 1162 (9th Cir.1997).

McAllister by supplying the transmission gear within the appropriate amount of time. Thorn's Diesel seeks indemnity from NREC and Lester for liability that may arise from the underlying suit.

The relationship between the claims by McAllister and the claims by Thorn's Diesel is not that the alleged actions of NREC and its agent provide an excuse to Thorn's Diesel's alleged breach of its contractual obligation to McAllister, but rather that NREC and Lester are responsible for delaying Thorn's Diesel's performance. Thorn's Diesel will only be indemnified for its own obligation to pay damages to the extent that it is able to prove the elements of the asserted fraud claim against NREC and/or Lester.

Because Thorn's Diesel seeks indemnity, although not through an indemnity agreement, but through recovery on its fraud claims against NREC and Lester, it is likely that this court has supplemental jurisdiction over the fraud claims. Federal courts generally have found that a defendant's claim against a third-party is part of the same case or controversy as the underlying action if the claim seeks indemnity for liability arising from the same facts as the underlying action. *E.g., Robert E. Blake,* 104 F.3d at 1162 (holding that the court had supplemental jurisdiction over a third party complaint that sought indemnity for liability arising from a plaintiff's maritime tort claim); *Revere Copper & Brass Inc. v. Aetna Cas. & Sur. Co.,* 426 F.2d 709, 715 (5th Cir.1970) ("An impleader action under Rule 14(a) is considered ancillary even though such an action does not, as a general rule, directly involve the aggregate of operative facts upon which the original claim is based, but arises out of that claim in the sense that the impleader action, such as the action for indemnity here brought by Aetna against Fuller, would not exist without the threat of liability arising out of the original claim.").

As earlier stated, however, there are circumstances under which a federal district court may exercise its discretion not to exercise supplemental jurisdiction. NREC and Lester argue that the court should decline to exercise supplemental jurisdiction because the misrepresentation claims raise a novel or complex issue of state law, the claims substantially predominate over the claims over which the court has original jurisdiction, and there are other compelling reasons for declining jurisdiction. NREC and Lester argue that the state law claim for misrepresentation involves the novel and complex issues of Louisiana law of whether and to what extent Louisiana law recognizes a cause of action for "misrepresentation," and if so, what defenses/damages are available, and whether the Third Party Complaint sufficiently states a claim upon which relief may be granted under Louisiana law.[4]

 In describing the exercise of jurisdiction over pendent state law claims, the Supreme Court explained that the justification for the exercise of such jurisdiction lies in considerations of judicial economy, convenience, and fairness to litigants. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). If these elements are not present, a federal court should hesitate to exercise jurisdiction over state claims. *Id.* "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.*

---

4. At this stage, Thorn's Diesel does not contest NREC's assertion that the misrepresentation claim is based on Louisiana law. Thus, the issue of which law applies to the misrepresentation claim is not currently before the court.

The parties do not cite this court to any Louisiana statutes or case law setting out the elements of fraud claims under Louisiana law. On the court's review of Louisiana cases, it appears clear that Louisiana law does recognize a state law claim for intentional misrepresentation and has set forth the elements necessary to establish a claim for misrepresentation. *Guidry v. U.S. Tobacco Co. ., Inc.,* 188 F.3d 619, 627 (5th Cir.1999) ("The elements of a Louisiana delictual fraud or intentional misrepresentation cause of action are: (a) a misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury."). Louisiana law also apparently recognizes a claim for negligent misrepresentation. *See Young v. Oberhelman,* 607 So.2d 719, 721 (La.App. 4th Cir.1992) ("Louisiana Civil Code articles dealing with delictual responsibility, La.C.C. arts. 2315–16, afford a broad ambit of protection for persons negligently damaged by acts of others sufficient to encompass a cause of action for negligent misrepresentation, provided the plaintiffs can prove the following elements: (1) the defendant owed a duty to supply correct information, (2) the defendant breached that duty, and (3) the plaintiff suffered damages because of the breach.") (citations omitted).

The claims asserted in this case, however, are for innocent, reckless, and or intentional misrepresentation. This court has been unable to find any cases or statutes which set forth the elements of, or the damages which may be awarded for, innocent or reckless fraud. Under these alternative theories, therefore, Thorn's Diesel's claims against NREC and Lester appear to pose novel questions under Louisiana law.

In addition, with regard to the claim against Lester, there appears to be some question as to the circumstances under which an agent can be held liable in tort

under Louisiana law for claims stemming from the performance of a contract. *See Kimball v. Modern Woodmen of America,* 939 F.Supp. 479, 482 & n. 6 (M.D.La.1996) (stating that the law is somewhat confusing and citing to discussions of the issue of the imposition of tort duties on disclosed agents within the context of performance of a contract).

■ NREC and Lester also argue that the claims between them and Thorn's Diesel will predominate over the underlying action between Thorn's Diesel and McAllister. A court may decline to exercise its discretion where the state law claim substantially predominates over a federal claim in terms of proof, scope, or remedy. *Gibbs,* 383 U.S. at 726–27, 86 S.Ct. 1130 (1966); *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 789 (3rd Cir.1995).

A federal district court in another jurisdiction determined that it would not exercise supplemental jurisdiction over a third party claim because the state law third party claim would predominate over the claim over which the court had original jurisdiction. *See Crown Life Ins. Co. v. Harris Bank Hinsdale,* No. 91–C–4222, 1992 WL 3699 (N.D.Ill. Jan.2, 1992). In that case, the main action involved a simple issue of whether a mortgagee failed to make required payments under the mortgage, while the third-party complaint raised claims of breaches of fiduciary duties, negligent representation, fraud, and conversion arising from the original financing and refinancing. *Id.* at *3. The court also noted issues raised only by the third-party complaint and not by the main action. *Id.* The court reasoned that when measured by the "number of issues raised, if not also by the complicated nature of those issues," the third-party claim substantially predominated over the main claim. *Id.*

█ The court finds this analysis to be persuasive in this case. The issues in the Complaint filed against Thorn's Diesel are relatively straightforward issues, including whether Thorn's Diesel breached a contract with McAllister Towing by failing to timely deliver the equipment. The issues raised by the Third Party Complaint involve more complicated issues in terms of the proof, scope, and/or remedy. First, as already discussed, it is unclear what the elements of the alternative claims for innocent or reckless misrepresentation would be under Louisiana law. Second, to prove the elements of those claims, there will have to be testimony as to the nature of alleged misrepresentations which presumably will then be countered by witnesses who are in Louisiana. In addition, while there is a fraud claim asserted in the Complaint by McAllister Towing, in the Third Party claim, there will also have to be evidence of reasonable reliance which is separate from any of the issues presented by the fraud claim in the main case. Finally, the damages will not be limited to contract damages, but will include whatever damages may be awarded under Louisiana law for fraud and, although the claims in the Third Party Complaint against NREC and Lester have been described as claims for indemnity, the claims could, depending on the outcome of the main case, even exceed the amount of liability of Thorn's Diesel to McAllister Towing.

The court recognizes that Thorn's Diesel has argued that it only brought claims against NREC and Lester to assist in the resolution of the claim by McAllister Towing. To the extent that the allegations against NREC and Lester are relevant in the main case, relevant evidence can still be offered on those points. The "indemnity" sought by Thorn's Diesel in its fraud claims is more appropriately considered by the courts of the state whose law would govern those fraud claims. Accordingly, this court will decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c).

## V. *CONCLUSION*

For the reasons stated above, the court finds that it will decline to exercise subject matter jurisdiction over Thorn's Diesel's third party complaint pursuant to 28 U.S.C. § 1367. Accordingly, it is hereby ordered that

1. The Motion to Dismiss (doc. # 45) filed by Third Party Defendant NREC Power Systems, Inc. and the Motion to Dismiss (doc. # 62) filed by Michael Lester are GRANTED and the Third Party Complaint is DISMISSED as to NREC Power Systems, Inc. and Michael Lester without prejudice.

2. The Motion to Strike (doc. # 56) filed by NREC is DENIED.

3. The Motion to Strike (doc. # 58) filed by NREC is DENIED as moot.